# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America, | No. CR-15-01390-003-TUC-JGZ (EJM) |
| Plaintiff, | **ORDER** |
| v. |  |
| Abelardo Rodriguez-Arvizu, |  |
| Defendant. |  |

On November 18, 2019, Defendant Abelardo Rodriguez-Arvizu was arrested by U.S. Border Patrol in Sasabe, Arizona, on suspected immigration charges.  On November 20, 2019, after processing at the Border Patrol station, he was turned over to FBI agents pursuant to an outstanding arrest warrant for charges related to a rip crew and a shooting of one of the members of the rip crew that occurred on October 24, 2014.  During the ride to the FBI office, Defendant made statements about the October 2014 incident. At the FBI office, Defendant was read his rights, waived his rights, and made further statements about the October 2014 incident.

Pending before the Court is Defendant's Motion to Suppress his statements.  (Doc. 144.) The motion is fully briefed.  (Docs. 153, 169, 236, 237.)  The motion was referred to United States Magistrate Judge Eric J. Markovich for report and recommendation.  Judge Markovich heard evidence on the motion on June 25, 2021, July 2, 2021, and July 23, 2021. (Docs. 188, 211, 227.) On October 12, 2021, Judge Markovich issued his Report and Recommendation (R&R), recommending that the Court grant the motion on three grounds:

(1) FBI agents violated Federal Rule of Criminal Procedure 4(c)(3)(A) when they failed to show Defendant the arrest warrant or advise him of the charges upon his arrest; (2) FBI agents violated Defendant's Fifth Amendment rights by questioning him after he had invoked his *Miranda* rights, including his right to counsel, while in Border Patrol custody; and (3) FBI agents violated Defendant's Sixth Amendment rights because Defendant did not knowingly, intelligently, and voluntarily waive his right to counsel prior to the FBI interview. (Doc. 243.) The Magistrate Judge recommended that the Court reject Defendant's argument that his Sixth Amendment right to counsel attached in immigration custody and his confession to the FBI was involuntarily obtained in violation of 18 U.S.C. § 3501(c) (the *McNabb-Mallory* rule) based on the Government's failure to promptly present Defendant to a magistrate judge following his arrest by the Border Patrol. (Doc. 243.)

The Defendant and the United States have filed objections to the R&R and supplemental authority.   (Docs. 252, 253, 254.) The United States challenges the Magistrate Judge's recommendations to suppress on the three separate grounds.   The Defendant challenges the Magistrate's recommendation to deny suppression as to the Sixth Amendment right to counsel ground and the application of the *McNabb-Mallory* rule.

After an independent review of the parties' briefing and the record, and for the reasons stated herein, the Court will sustain the United States' objection, adopt Magistrate Judge Markovich's recommendation in part, and deny the Motion to Suppress.

## STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original).  District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  Further, a party is not entitled as of right to *de novo* review of evidence or arguments which are raised for the first time in an objection to the report and recommendation, and the Court's decision to consider newly raised arguments is discretionary.  *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000).

## BACKGROUND

In the R&R, the Magistrate Judge summarized the testimony and evidence admitted at the hearings on the motion to suppress.  (*See* Doc. 243 at 2–35.)  There are no separate findings of fact and no credibility findings.

The parties do not dispute the Magistrate Judge's summary of the evidence, only the legal significance of the evidence.  Accordingly, the Court does not restate the evidence except as necessary to its analysis of the issues presented.

## DISCUSSION

### I.    Rule 4 Violation

The Magistrate Judge found that Government violated Rule 4(c)(3)(A), Fed. R. Crim. P., because the FBI agents failed to show Defendant the arrest warrant or inform him of the offenses charged when they took custody of him from Border Patrol. (Doc. 243 at 36.) He concluded that the violation was not a constitutional violation, but reasoned that suppression of all of the Defendant's statements was warranted because Rule 4 imposes on law enforcement mandatory requirements that were designed to protect a defendant's right against self-incrimination.  (*Id.* at 43, 47-49.)

The Government objects to the Magistrate Judge's recommendation for suppression, noting there is no precedent applying the exclusionary rule to a violation of Rule 4, and that the Supreme Court has cautioned that extending the exclusionary rule should always be the last resort.  (Doc. 252 at 14.)   The Government also argues that the statements by Defendant are otherwise admissible under the Fifth Amendment because his statements in the car were spontaneous, his statements made in the subsequent FBI interview were made after he waived his *Miranda* rights at the FBI office, and the agents

did not mislead Defendant regarding the true nature of their investigation.  (*Id.* at 8.)  Lastly, the Government argues that any alleged violation of Rule 4 in this case was a technical violation because the Defendant's spontaneous statements indicated that he knew what the charges he faced pertained to .  (*Id.* at 17.)

For the reasons that follow, the Court will sustain the Government's objection.

## A.      Rule 4(c)(3)(A) and its Purpose

Arrest warrants on indictments must be executed in accordance with Rule 4(c)(3)(A).  Fed. R. Crim. P. 9(c).  Rule 4(c)(3)(A) provides in relevant part:

> Upon arrest, an officer possessing the original or a duplicate original warrant must show it to the Defendant.  If the officer does not possess the warrant, the officer must inform the Defendant of the warrant's existence and of the offense charged and, at the Defendant's request, must show the original or a duplicate original warrant to the Defendant as soon as possible.

Fed. R. Crim. P. 4(c)(3)(A).  The Advisory Committee Notes of 1944 do not explain the purpose for the requirement that the officer inform the defendant of the warrant's existence and of the offense charged if the officer does not possess the warrant; the Committee Note simply observes, "The rule, however, safeguards the defendant's rights in such case."  Fed. R. Crim. P. 4, Advisory Comm. Note to Subdivision (c)(3).

In *Bryson v. United States*, 419 F.2d 695, 700-01 (D.C. Cir. 1969), the court considered possible purposes of the requirement in Rule 4(c)(3)(A) that defendants be informed of the offense charged if an officer does not possess a warrant at arrest. There, like the present case, the defendant argued that officers violated Rule 4(c)(3)(A) when they arrested him pursuant to a valid arrest warrant, but failed to inform him of the underlying charge.  *Id.*  Although the *Bryson* court ultimately declined to decide whether the exclusionary rule was an appropriate remedy for violation of the rule, or whether a violation had even occurred (since the defendant had not presented that claim to the trial court), the court did consider the possible prejudice to the substantial rights of the defendant "which the Rule might have been designed to protect," while first noting the Advisory Committee's silence as to the rule's purpose:

- 4 -

> The Rule, its purpose, and its meaning are all best known to the draftsmen. Its application to a case such as this has not previously been argued in this court, and neither appellant nor the trial court thought of it below. Its purpose is veiled by the Advisory Committee's laconic explanatory comment that it "safeguards the defendant's rights'" where the arresting officers are not in possession of the warrant they are executing. The mystery is enhanced by the rule's ostensible negative implication that if the police do have a warrant with them, they need not show it to the defendant or offer him any other information concerning the grounds of the arrest unless he asks.[1]

*Id.* at 700-01.  Not having a definitive basis for identifying the purpose of the information requirement, the *Bryson* court surmised, without attribution, that the provision "might serve" three different purposes:

> First, it might prevent any unexplained detention of a lawfully arrested defendant. . . . Second, by informing him of the warrant and charges against him, the Rule might safeguard an arrestee's privilege against self-incrimination. . . . Finally, the rule might be designed to prevent unexplained arrests, thus insuring against the possibility that a suspect will, out of ignorance, resist a lawful arrest.

*Id.* at 701.  In the end, the *Bryson* court found that none of the purposes were implicated on the facts of the case, and notably that the defendant's privilege against self-incrimination was not at play because the defendant had not incriminated himself. *Id.* at 701.  As a result, the court left for another day the question whether a broad exclusionary rule was needed to enforce the rule.  *Id.* at 702.[2]

//

---

[1] The original wording of Rule 4(c)(3)(A) was slightly different than its modern counterpart.  The original rule read in relevant part: "The officer need not have the warrant in his possession at the time of the arrest, but upon request he shall show the warrant to the defendant, as soon as possible.  If the officer does not have the warrant in his possession at the time of the arrest, he shall then inform the defendant of the offense charged and of the fact that a warrant has been issued." Fed. R. Crim. P 4(c)(3)(A) (1944).

[2] Although it is not clear what "rights" the Advisory Committee intended to safeguard by adding the information requirement to Rule 4(c)(3)(A), there is some question whether the Committee intended to protect a defendant's right against self-incrimination. When the rule was adopted, there was no bar on the admission of a defendant's responses to questions by arresting officers unless the statements were found to be involuntary, meaning they were "induced by threat, promise, or encouragement of hope or favor." *In re Kosopud*, 272 F. 330, 336 (N.D. Ohio 1920) (cited by the Advisory Committee as grounds for the rule that an officer need not have a warrant in his possession at arrest.)  In addition, it is not clear that the Fifth Amendment protection against such inducement is applicable here, where defendant's statements were not induced and agents did not question.

### B.   Application of the Exclusionary Rule for Rule 4(c)(3)(A) Violation is Not Warranted

As noted by the Magistrate Judge in the R&R, in the fifty years since the *Bryson* decision, no court has held that a violation of Rule 4(c)(3)(A) warrants application of the exclusionary rule. (Doc. 243 at 39-42.) In *United States v. Chung*, 2016 WL 11432472, *7 (N.D. Ga. Sept. 12, 2016), the court rejected the defendant's argument that his waiver of rights was not intelligent because he was not advised of the charges against him or the topics about which the agents intended to question him.   Like the present case, the defendant was arrested pursuant to an arrest warrant and questioned by the arresting agents about an hour later at the FBI office.  *Id.* at *8. The *Chung* court concluded that the failure to inform the defendant of the charges was not determinative of the legality of the defendant's waiver of rights, reasoning that the Supreme Court has "never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights."  *Id.* at *7.  The court further noted that no court has held that a violation of Rule 4(c)(3)(A)'s requirement that an arrestee be advised of the offense for which is being arrested, be remedied by suppression of subsequently-made statements.  *Id*. at *8.

The Supreme Court has held that suppression is a "last resort"; the violation of a rule, even if associated with a constitutional right, does not necessarily warrant suppression; and the defendant's interests that were violated must have been the interests the rule was designed to protect. *Hudson v. Michigan*, 547 U.S. 586, 591-92 (2006) ("Suppression of evidence . . . has always been our last resort, not our first impulse."). The Supreme Court has repeatedly held that the exclusionary rule is triggered only in cases where police conduct is sufficiently deliberate so that exclusion can meaningfully deter it and sufficiently culpable that deterrence is worth the price paid by the justice system.  *Herring v. United States,* 555 U.S. 135, 141 (2009). Where police mistakes are the result of negligence, rather than systematic error or reckless disregard of constitutional requirements, "any marginal deterrence does not pay its way." *Id.* at 147-48 (cleaned up).

Applying these standards, the Court sees no basis for application of the exclusionary rule.

The conduct at issue in this case cannot be said to be sufficiently deliberate such that exclusion could meaningfully deter it or sufficiently culpable that deterrence is worth the price paid by the justice system. The FBI agents were executing a valid arrest warrant. (Doc. 243 at 23.) They picked up the Defendant, who had been given *Miranda* warnings at the Border Patrol station, and transported him to the FBI office. (*Id.* at 3, 23.) There was no deception about what agents were doing and no effort to mislead the Defendant about the nature of the investigation. At the outset, Agent Ramirez informed Defendant that he was an FBI agent, that the Defendant was being arrested on a federal warrant, and that the Defendant was going to be transported to the FBI office for processing and an interview. (*Id.* at 23.)

There was no effort to elicit statements from the Defendant prior to providing *Miranda* warnings at the FBI office. During the car ride, which was approximately 15 minutes long, the agents did not initiate a conversation with Defendant or attempt to question him. (*Id.* at 21.) When the Defendant made statements, Agent Ramirez repeatedly responded by telling Defendant if he wanted to talk, then he would have an opportunity to do so at the FBI office. (*Id.*) The FBI agents gave Defendant *Miranda* warnings when they reached the FBI office. (*Id.* at 22.) Although the agents did not specifically identify each of the charges against Defendant, they did inform him that they wanted to discuss the incident that had occurred five years ago—the incident that Defendant was aware of, because he had asked during the car ride if they were arresting him because of that incident. (*Id.* at 28.) Defendant waived his rights and agreed to speak with agents. (*Id.*) Only then was he questioned. (*Id.*)[3]

---

[3] The Court rejects the Magistrate Judge's inference of bad faith and conclusion that Agent Ramirez "*basically* told the Defendant that he could not answer his question about the charges unless he waived his *Miranda* rights." (Doc. 243 at 48.) This conclusion was based on a reading of the transcript of the interview. Agent Ramirez never conditioned informing Defendant of the charges on Defendant's waiver of his rights. Read in context, in informing Defendant of his *Miranda* rights, Ramirez explained in general terms that the interview could not take place and he could not talk to Defendant about the pertinent factual information the FBI knew if Defendant invoked his rights. Again, Agent Ramirez did not know the actual charges and therefore was not in a position to condition disclosing the charges to Defendant if he waived his rights.

On these facts, there can be no inference that the FBI agents deliberately failed to inform Defendant of the charges in the warrant to gain some advantage or deceive him. *See Bryson*, 419 F.2d at 703 (concurrence) (stating that where it is more probable than not that that the defendant "was fully aware of the officer's authority and purpose, informing the defendant of the warrant and charges is a "useless gesture"). Moreover, the failure to inform the Defendant of the specific offenses with which he was charged does not rise to the level of "deliberate, reckless, or grossly negligent conduct" that the exclusionary rule is meant to deter. *Herring v. United States*, 555 U.S. 135, 144 (2009); *see United States v. Radlick*, 581 F.2d 225, 228 (9th Cir. 1978) (confusion by officers is not a disregard for the rules). Nor does there exist "an exceptional reason, [like] the protection of a constitutional right" for the exclusion of the Defendant's statements. *United States v. Harrington*, 681 F.2d 612, 615 (9th Cir. 1982) (refusing to suppress evidence where it was "seized by an officer who, for some technical reason, should not have conducted the search"). As noted by the Magistrate Judge, Rule 4(c)(3)(A) does not implement a Constitutional requirement.

Assuming, as the *Bryson* court did, that Rule 4(c)(3)(A) was meant to protect a defendant's Fifth amendment right against self-incrimination, that interest was not violated here. The Fifth Amendment is only implicated by custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."); *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (interrogation refers "to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response"). The Defendant was not questioned on the ride from the Border Patrol station. Agent Ramirez, conscious of his legal obligations, did not want to attempt to start a custodial interrogation in the car, and did not want to speak to Defendant until he read him his *Miranda* rights, which he told Defendant numerous times. (Doc. 243 at 24–25, 29.) Agent Ramirez told the Defendant that he "could not talk to him there inside the vehicle, that we would have an opportunity

1
2
to talk to him at the FBI office," and did not otherwise respond to the Defendant's statements.[4] *(Id.)*

3
4
5
6
7
8
9
10
There is some suggestion in the R&R that the failure of the FBI agents to advise Defendant of the charges was the result of systematic error, but there is little evidence to support this.[5] As noted previously, there are few cases reporting violations of Rule 4(c)(3)(A). In addition, there is no evidence that the failure to abide by Rule 4 is a systemic problem regularly occurring at the FBI or in federal law enforcement generally.  The testimony in this case shows only that Agent Ramirez did not inform the Defendant of the charge because he thought it was sufficient that Defendant knew what the charges were about.[6]

11
12
For the foregoing reasons, the Court will deny Defendant's request for suppression based upon the agents' violation of Rule 4(c)(3)(A).

13
**II.    The Defendant's Fifth Amendment Right to Counsel was Not Violated**

14
15
The Magistrate Judge concluded that Defendant invoked his Fifth Amendment right to counsel at the U.S. Border Patrol station, thereby precluding FBI agents from

16
17
18
19
20
21
[4] The Court disagrees with the Magistrate Judge's conclusion that Defendant's statements resulted from the Rule 4(c)(3)(A) violation. The Magistrate Judge reasoned that because a purpose of the Rule 4(c)(3)(A) is to ensure an arrestee understands why he is being arrested, and because an arrestee who does not know the basis of the arrest could ask for that information and incriminate himself in the process, the failure to inform an arrestee of the charges upon arrest prejudices an arrestee, like the Defendant, who makes inculpatory statements in an effort to discover the charges. There are critical gaps in this "but for" analysis. The fact that the offense information is not provided does not compel one to make inculpatory statements. An arrestee who is not informed of the basis for an arrest may or may not ask why he is being arrested. More importantly, even if the arrestee does ask, he is not compelled to incriminate himself in the process.

22
23
24
25
[5] The R&R states: "Agent Terwilliger testified that she is only legally obliged to advise the defendant that he is being arrested pursuant to a federal warrant, and not to inform the defendant of the charges" and "she does not make it a practice to read or explain a charging document to a defendant that she has arrested on a warrant." (Doc. 243 at 37.) However, review of the transcript shows that Agent Terwilliger was being asked about the responsibility of telling an arrestee about an "indictment" and Agent Terwilliger testified that the person or entity who usually shows "the charging documents, like the complaint and the indictment" is the attorney or magistrate judge. (6/25/21 Tr. at 35.)

26
27
28
[6] Agent Ramirez testified that he is trained to tell the arrestee that he's being arrested on a federal warrant and if he had the warrant, to give it to him there. (7/2/21 Tr. at 47.) If an arrestee asks about the charges, he is obligated to tell the arrestee what he's being arrested for, but Agent Ramirez did not do that in this case because, based on the Defendant's statements in the car, he already knew. (*See* Doc. 243 at 25, 38.)

1    questioning the Defendant at any subsequent time. (Doc. 243 at 51.) Thus, the Magistrate

2    Judge recommends that the Defendant's subsequent statements—those made during the

3    car ride from the Border Patrol station and those made during the interview with FBI agents

4    at the FBI office—be suppressed. (*Id.* at 63.) Upon review, the Court concludes that the

5    evidence presented is insufficient as a matter of law to support the finding that the

6    Defendant invoked his Fifth Amendment right to counsel at the Border Patrol station.

7           When a defendant invokes his Fifth Amendment right to counsel, officers must end

8    the interrogation immediately and not question any further unless the defendant later

9    decides otherwise. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  A defendant who

10   wants to invoke his *Miranda* right to counsel must do so "unambiguously." *Davis v. United

11   States*, 512 U.S. 452, 459 (1994).   The *Edwards* rule applies "only when the suspect

12   has expressed his wish for the particular sort of lawyerly assistance that is the subject

13   of *Miranda.* It requires, at a minimum, some statement that can reasonably be construed to

14   be an expression of a desire for the assistance of an attorney in dealing with custodial

15   interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (cleaned up)

16   (emphasis omitted).  Law enforcement officers are not required to ask questions to clarify

17   a *Miranda* invocation where the accused has not made an unambiguous statement to invoke

18   his right to counsel. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

19          Here, there is no evidence that the Defendant unambiguously invoked his *Miranda*

20   right to counsel. In his motion to suppress, the Defendant does not argue that he invoked

21   his right to counsel; rather, he argues that the government violated *Miranda* because the

22   *arresting* Border Patrol agent did not read him his rights and because, later when he clearly

23   and unequivocally invoked and "elected to remain silent," FBI agents questioned him.

24   (Doc. 144 at 12-13.)   Consistent with this argument, the evidence shows that Defendant

25   did invoke his right to remain silent.  Agent Verduzco's report states that the Defendant

26   was advised of his rights, acknowledged that he understood his rights, and "stated he was

27   not willing to give a statement."  (Ex. 2 at 3.)[7]  The forms used by Border Patrol to advise

28
─────────────
        [7] The Court retained the exhibits for its decisional process and will return the
exhibits to the parties upon filing of this order per court policy.

of rights and obtain waivers corroborate Agent Verduzco's report.  The Advisement of Rights form is signed by the Defendant.  (Ex. 3.)  The "Waiver" portion of the form is unsigned.  (*Id.*)  Moreover, the "Record of Sworn Statement in Affidavit Form," which is signed both by the Defendant and Agent Verduzco, includes the following exchange:

> Being duly sworn, I make the following statement:
>
> Q:  Do you understand what I have said to you?
> A:  Yes
>
> Q:  Any statement you make must be given freely and voluntarily. Are you willing to answer my questions at this time?
> A:  No.

(Ex. 4.)  None of the evidence and none of Defendants' statements show that Defendant requested counsel, as required to invoke that specific *Miranda* right.

The R&R suggests that the Government did not *prove* that the Defendant only invoked his right to remain silent.  (*See* Doc. 243 at 54 ("the references in these documents, standing alone, do not clearly evidence that the defendant only invoked his right to remain silent"; "the Court cannot conclude that the defendant did not invoke his right to counsel when the agent who advised the defendant of his rights cannot recall the defendant's response and can only draw the conclusion that the defendant 'invoked his rights' based on the unsigned Advice of Rights form").)  The Court has found no case that requires the Government to prove a defendant failed to invoke a particular *Miranda* right in the absence of any claim by that defendant that the right was, in fact, invoked. But even if the Government were required to prove this negative, the only reasonable inference from the evidence is that the Defendant invoked only his right to remain silent.  The Affidavit, created at the time of the invocation, contains Defendant's verified statements that, after advisement of his rights, he "was not willing to answer [] questions." (Ex. 4.) Agent Verduzco's report similarly states Defendant was not willing to give a statement. (Ex. 2 at 3.)  In *Berghuis*, the Supreme Court identified these exact types of statements as being clear invocations of the right to remain silent. *Berghuis*, 560 U.S. at 382 ("Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his "right to

cut off questioning.").

"The applicability of the rigid prophylactic rule of *Edwards* requires courts to determine whether the accused *actually invoked* his right to counsel." *Davis v. United States*, 512 U.S. 452, 458–59 (1994) (emphasis in original) (cleaned up). "[A] statement either is such an assertion of the right to counsel or it is not." *Id.* at 459 (citation omitted); *see also United States v. Younger*, 398 F.3d 1179, 1185 (9th Cir. 2005) (reviewing factual findings concerning the words a defendant used to invoke the right to counsel for clear error and whether the words actually invoked the right to counsel de novo). The Magistrate Judge relied on the unsigned Advisal of Rights form, from which he inferred—without specific explanation—that the Defendant had invoked both his right to remain silent and his right to counsel. (Doc. 243 at 54.)  The Magistrate Judge also cited Agent Verduzco's memory lapse and the unsigned waiver to conclude that "when the Defendant invoked his rights, he invoked all his rights, including his right to counsel." (*Id.* at 56.)  But none of these documents show Defendant's assertion of the right to counsel.

The Magistrate Judge also thought it reasonable to infer that Agent Verduzco himself interpreted the Defendant's invocation of his rights to include his right to counsel, because Agent Verduzco did not correct the Magistrate Judge when the Magistrate Judge put questions to him that assumed, as a premise of the question, that the Defendant had invoked both rights.  (*Id.* at 55.)  This inference is inconsistent with the Magistrate Judge's finding that Agent Verduzco had no independent recollection of the Defendant's statements or their interaction. (*Id.* at 18, 54.)  It is also inconsistent with the documentary evidence. On this record, and in the absence of any claim by Defendant that he invoked his right to counsel, this inference by the Magistrate Judge was unreasonable and clearly erroneous.[8]

In sum, the Court concludes that there was no violation of the Defendant's Fifth

---

[8] Because the Court finds that Defendant did not invoke his right to counsel, the Court need not address the United States' alternative argument that was rejected by the Magistrate Judge. (Doc. 243 at 57). The Court, however, notes that it would also sustain the United States's alternative argument that there was no Fifth Amendment violation of the right to counsel because Defendant clearly reinitiated contact with the agents by making spontaneous statements in the car ride, there was no interrogation in the car, and Defendant later waived his right to counsel.

Amendment right to counsel. The evidence does not establish that the Defendant made an unambiguous assertion of the right to counsel or expressed a desire to deal with law enforcement only with an attorney present.

**III.    The Defendant's Sixth Amendment Right to Counsel was Not Violated**

The Magistrate Judge found that the FBI did not violate Defendant's Sixth Amendment right to counsel by readvising him of his rights and questioning him about nonimmigration offenses (assuming a valid waiver), even though Agent Verduzco had processed Defendant earlier on November 18, 2019.  (Doc. 243 at 49.)  The Magistrate Judge determined that the right to counsel in this instance did not attach at the issuance of the September 2016 Indictment because "the offenses alleged in the indictment and listed on the arrest warrant are obviously different than the suspected immigration offenses that led to the Defendant's arrest by Border Patrol."  (*Id.*)

The Defendant objects to the Magistrate Judge's conclusion, arguing that his right to counsel under the Sixth Amendment attached when he was indicted in 2016. (Doc. 253 at 3.) The Defendant claims that the prior, nonimmigration-related indictment was the pretext for Agent Verduzco to advise the Defendant of his *Miranda* rights on November 19, 2018. (*Id.* at 3–4.) The Defendant thus asserts his right to counsel under the Sixth Amendment should have precluded any questioning by Agent Verduzco at the Douglas station. (*Id.*)

The Defendant conflates the right to counsel under the Fifth and Sixth Amendments. Under the Sixth Amendment, law enforcement may not "deliberately elicit" post-indictment statements from the accused in the absence of retained counsel. *Massiah v. United States*, 377 U.S. 201, 204 (1964). However, this right to counsel is "offense specific" and attaches only "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Law enforcement officers do not violate a suspect's Sixth Amendment right to counsel if they question the accused regarding a crime

for which formal proceedings have not yet been initiated—even if formal proceedings have been initiated for another crime. *See Texas v. Cobb*, 532 U.S. 162, 170–171 (2001).

Setting aside (in this section) the issues of whether the Defendant invoked his right to counsel under the Fifth Amendment or later waived it under the Sixth Amendment, the Court concludes that Defendant was not deprived of his Sixth Amendment right to counsel as to the charges in the Indictment, during processing by Agent Verduzco. The existence of the 2016 Indictment only prohibited interrogation (without waiver) regarding the offenses in the Indictment. Agent Verduzco "agreed with defense counsel that he advised the Defendant of his rights because the Defendant had a warrant for his arrest, so he knew the Defendant had been charged with some criminal offense." (Doc. 243 at 18.) There is no evidence, however, that Agent Verduzco questioned the Defendant about anything related to the charges contained in the Indictment.[9] Thus, the Court agrees with Magistrate Judge Markovich that, "FBI agents did not violate the Defendant's Sixth Amendment right to counsel by readvising him of his rights and questioning him about nonimmigration offenses, assuming the Defendant validly waived that right." (*Id.* at 50.)

**IV.   The Defendant's Fifth Amendment Right to Remain Silent was Not Violated**

Magistrate Judge Markovich concluded that the FBI agents did not obtain the Defendant's statements in violation of *Miranda* because Border Patrol agents "ceased questioning when the Defendant invoked his right to remain silent" and "a significant period of time passed (a day) before the FBI questioned" the Defendant, at which point "a fresh set of *Miranda* warnings was provided" for questioning on charges that "were not the subject of the Border Patrol arrest." (*Id.* at 51.)

The Court agrees with Magistrate Judge's conclusion and reasoning. Agent Verduzco provided *Miranda* warnings to the Defendant on the immigration-related charges and ended questioning after the Defendant invoked his right to remain silent. (*Id.* at 3; *see*

---

[9] Although Agent Verduzco did not have an independent recollection of his interaction with the Defendant, he testified that, even if the Defendant had waived his *Miranda* rights at the Douglas station, Agent Verduzco would have asked him only "immigration-related questions" and "would not have asked the Defendant questions about the warrant." (Doc. 243 at 19.)

*also* Ex. 4 (affidavit in which Defendant asserted his right to remain silent about questions regarding "illegal entry to the United States")). "At no time did Agent Verduzco tell the Defendant that [Agent Verduzco] wanted to speak with the Defendant about anything other than immigration offenses." (Doc. 243 at 18–19.)

Under the Fifth Amendment, procedural safeguards must assure a suspect that his right to remain silent will be "scrupulously honored." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). When a suspect invokes that right, "interrogation must cease." *Id.* at 474. But that cessation is not permanent. A suspect's "right to cut off questioning" may still be scrupulously honored where law enforcement resumes questioning "only after the passage of a significant period of time and the provision of a fresh set of warnings and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." *Michigan v. Mosley*, 423 U.S. 96, 106 (1975). In *Mosley*, the suspect was arrested and held in connection with robbery charges. *Id.* at 98. Several hours after he invoked his right to remain silent about the robbery charges, a different officer—at a different location— offered new *Miranda* warnings and questioned him about an unrelated shooting, and the defendant waived his right to remain silent. *Id.* at 98, 104–105. The Court held that the defendant's statements were not obtained in violation of *Miranda* because of the circumstances surrounding the renewed, separate questioning. *Id.* at 106–107.

In this case, the Border Patrol agents scrupulously honored the Defendant's right to remain silent regarding his immigration charges, and the FBI agents restricted their interrogation to the separate crimes charged in the Indictment after new *Miranda* warnings and a significant period of time. Like *Mosley*, FBI agents questioned the Defendant after a significant period of time had passed (a day) about a crime that was not the subject of the earlier interrogation.

The Defendant argues that "when the arrest warrant was discovered, [the Defendant] was being held on the arrest warrant not merely because he was in the country without documentation." (Doc. 253 at 5.) This argument is not persuasive and Defendant fails to provide support for his assertion that he was being held on the arrest warrant, beyond Agent

- 15 -

Verduzco's testimony that he advises detainees of their *Miranda* rights when he believes they have been charged with a criminal offense. (*Id.*)  Moreover, Defendant does not argue that his right to remain silent regarding the charges in the Indictment was not honored. (*See id.* at 6.)  Finally, as in *Mosley*, just as it did not matter that the suspect was detained for investigation of robbery charges when he was questioned about a shooting that occurred at a different time, the circumstances of the Defendant's detention by Border Patrol are irrelevant where Border Patrol agents scrupulously honored Defendant's invocation of his right to remain silent.

## V.      The Defendant Validly Waived His Sixth Amendment Right to Counsel

In his motion to suppress, the Defendant argues that his Sixth Amendment right to counsel was violated because he did not knowingly, intelligently, and voluntarily waive that right. (Doc. 243 at 64.)  In the R&R, the Magistrate Judge concludes that the Defendant voluntarily waived his right to counsel, but that the waiver was not "knowing and intelligent" because of the Defendant's confusion about his right to counsel, coupled with the fact that he did not know the charges against him.   (Doc. 243 at 71.) Thus, the Magistrate Judge recommends suppression of the Defendant's statements taken at the FBI office for violation of Defendant's Sixth Amendment right to counsel.

The government disputes the Magistrate Judge's finding that the FBI agents' conduct and the Defendant's confusion should require that the Defendant's statements during the FBI interview be suppressed. (Doc. 252 at 12.) In its view, the Magistrate Judge "overlooked steps the agents took to remedy any alleged confusion," including multiple exchanges from the interview transcript in which Agent Ramirez attempted to ameliorate confusion by pausing to clarify that the Defendant wished to speak to the agents without an attorney present. (*Id.*)  The Court agrees and finds no Sixth Amendment violation.

As stated above, the Sixth Amendment right to counsel attaches at or after the initiation of adversary judicial criminal proceedings, including formal charges and indictments. *McNeil*, 501 U.S. at 175. Statements deliberately elicited by the government from an individual (in the absence of counsel) after formal adversary criminal proceedings

have commenced are inadmissible, absent proof of a voluntary, knowing, and intelligent waiver of the Sixth Amendment right to counsel. *Michigan v. Harvey*, 484 U.S. 344, 348–39 (1990).  The government bears the burden of proving that an individual waived his right to counsel by a preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

The Supreme Court has held that an accused person who is "admonished with the warnings prescribed by. . . *Miranda* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson v. Illinois*, 487 U.S. 285, 296 (1988).  There is no question that the Defendant received *Miranda* warnings, in Spanish; and that the warnings informed the Defendant of the nature of his rights (the right to remain silent and to counsel) and of the consequences of abandoning the rights (his statements could be used against him).  In fact, the Defendant signed an acknowledgement of his rights and a  written waiver of the rights. (Ex. 6.)

The Magistrate Judge concluded that the Defendant's appraisal was insufficient because he was not informed of the charges contained in the Indictment and because his statements suggested he was confused about the right to counsel.  The Court disagrees with this conclusion.  Although the *Patterson* Court said that it did "not address the question whether or not an accused must be told that he has been indicted before a post indictment Sixth Amendment waiver will be valid," *Patterson*, 487 U.S. at 296 n. 8, "several federal circuit courts and at least one state appellate court have, either directly or indirectly, and all have answered it the same way: the failure to inform the defendant that he has been charged with the crime with respect to which he is making a statement does not vitiate an otherwise valid *Miranda* warning given at the interview where the statement was made." *Johnson v. Indiana*, 851 N.E.2d 372, 377 (Ind. Ct. App. 2006) (collecting cases).  These courts' conclusions are consistent with the Supreme Court's statement after *Patterson*: "We have recently held when a suspect waives his right to counsel after receiving warnings equivalent to those prescribed by *Miranda* [], that will generally suffice

to establish a knowing and intelligent waiver of the Sixth Amendment right to counsel for purposes of postindictment questioning." *Michigan v. Harvey*, 494 U.S. 344, 349 (1990).

Moreover, even if "a Defendant's knowledge about an indictment is a fact that can be considered in determining the validity of the waiver of the Sixth Amendment right to counsel," (Doc. 243 at 67), the significant weight that the Magistrate Judge placed on this factor was unwarranted given the totality of the circumstances. Regardless of whether the Defendant was "shown the arrest warrant which listed the charges or advised of the charges," (*Id.* at 70), the context of the interview shows that he knowingly and intelligently waived his right to counsel under the Sixth Amendment. (Ex. 8 at 4.) The advisal of rights at the FBI office was the second time in less than twenty-four hours that the Defendant reviewed his *Miranda* rights. Agent Ramirez apprised the Defendant of his rights using the Spanish waiver of rights form prior to beginning the interview. (Doc. 243 at 22.) The Magistrate Judge acknowledged that following the Defendant's advisal of rights by Agent Ramirez, "[t]here is certainly no doubt that the Defendant acknowledged, either verbally or non-verbally, that he understood each right explained to him by Agent Ramirez." (*Id.* at 69–70.) Moreover, the spontaneous statements made by the Defendant in the vehicle relating to the 2014 incident indicated that the Defendant was aware of the criminal liability he faced, albeit not the specific charges. (*Id.* at 21.) And again, despite the lack of knowledge about the contents of the warrant, his arrest by two FBI agents after transportation away from his original place of detention—along with his comments in the car—indicate that the Defendant was aware of the gravity of the situation. In the car, the Defendant referenced both the shooting of his conspirator in the desert and the lengthy sentence received by a conspirator. (Doc. 243 at 29.)

Finally, although the Defendant initially made statements suggesting some confusion about his right to counsel, the record shows that Agent Ramirez responded to each of the Defendant's statements and appropriately clarified to the Defendant that he could end the interview and retain counsel, and that the Defendant's permission was required for Agent Ramirez to speak to him without an attorney. (Ex. 8 at 3-4.) Agent

Ramirez told the Defendant, "you are in control of everything," and "we need your signature giving us permission to be able to speak to you without an attorney." (*Id.*) In the exchange immediately prior to Defendant's waiver, Agent Ramirez confirmed Defendant's knowing and intelligent waiver.

> Defendant:   And an attorney- Do I have an attorney or what?
> Ramirez:   This is your- If you w- If you want an attorney, that is your right and you should- you- you will have it.
> Defendant:   Go head and get it over with. Let whatever happens, happen.
> Ramirez:   Just in order to understand well, because you had a question: You give us permission to speak to you without an attorney. Is that correct?
> Defendant:   Sure.
> Ramirez:   Ok.
> Defendant:   Since- I'm [in it] up to my sleeve. Right? [Chuckles]

(Ex. 8 at 4.)

Based on the totality of the evidence, the Court finds that the Government met its burden of proving by a preponderance of the evidence that the Defendant knowingly and intelligently waived his right to counsel under the Sixth Amendment.[10]

## VI.   The Defendant was Not Detained in Violation of the *McNabb-Mallory* Rule or 18 U.S.C. § 3501(c)

The Defendant moves for suppression of his statements pursuant to the *McNabb-Mallory* Rule and 18 U.S.C. § 3501(c). (Doc. 144 at 8–9.) Rule 5 requires that law enforcement "making an arrest within the United States must take the Defendant without unnecessary delay before a magistrate judge[.]" Fed. R. Crim. P. 5(a)(1). The *McNabb-Mallory* rule "generally render[s] inadmissible confessions made during periods of detention that violat[e] the prompt presentment requirement of [Federal Rule of Criminal Procedure] 5(a)." *Corley v. United States*, 556 U.S. 303, 309 (2009) (quoting *United States*

---

[10] The Defendant also argues that his consent to a DNA swab is tainted by the Constitutional violations and therefore, the results of the swab should be suppressed as fruit of the poisonous tree. (Doc. 144 ¶ 102.) As the Court has rejected the Defendant's challenges, the Court also denies the Defendant's request for suppression of this evidence.

*v. Alvarez-Sanchez*, 511 U.S. 350, 354 (1994)). The rule was modified by 18 U.S.C. § 3501(c), which established a "six-hour safe harbor for voluntary confessions" following an arrest. *United States v. Gowadia*, 760 F.3d 989, 993 (9th Cir. 2014). The statute allows for admission of statements even if there is a delay in appearance before a magistrate judge, "if such confession is found by the trial judge to have been made voluntarily . . . and if such confession was made or given by such person within six hours immediately following his arrest or other detention." 18 U.S.C. § 3501(c).

The Defendant argues that the 18 U.S.C. § 3501(c) clock started with his arrest by Border Patrol agents on November 18. (Doc. 144 at 8–9; *see also* Doc. 243 at 72–73.) He argues that his statements to the FBI agents on the morning of November 20 were thus outside the six-hour safe harbor rule and that the delay in appearance before a magistrate judge was not reasonable or necessary because the government had the ability to present him to the magistrate judge after his arrest on November 18. (*Id.* at 10-11.)

The issue of the Defendant's voluntariness notwithstanding, the Magistrate Judge concluded that there was no violation of the *McNabb-Mallory* Rule or 18 U.S.C. § 3501(c) due to the "independent triggers for starting the safe harbor clock" during the Defendant's detention. (Doc. 243 at 75–76.) The first trigger was his arrest by Border Patrol on November 18, 2019, on suspected immigration violations.[11] The second trigger was his arrest by the FBI, pursuant to the outstanding warrant, on November 20, 2019. (*Id.*) The Magistrate Judge determined that the Defendant's arrest by the FBI re-initiated the six-hour safe-harbor clock, and therefore, the Defendant's confession, which occurred within six hours of this arrest, was not obtained in violation of *McNabb-Mallory* or 18 U.S.C. § 3501(c). (*Id.* at 76.)

The Court agrees with Magistrate Judge Markovich's analysis. Defendant was arrested by Border Patrol agents on November 18. (*Id.* at 3.) The Defendant was processed through Border Patrol booking procedures at the Tucson Border Patrol Station before being transported to the Douglas Border Patrol Station on November 19, due to overcapacity in

---

[11] During the Defendant's detention for a suspected immigration violation, he did not make a confession related to the indictment or otherwise. (Doc. 243 at 3.)

the Tucson Border Patrol Station. *(Id.)*  At around 5:30 p.m. on November 19, "a criminal and immigration history query revealed the arrest warrant" from the 2016 indictment. FBI Agent Terwilliger, upon learning from Border Patrol that the Defendant was in custody, asked that the Defendant be transported "to the Tucson Border Patrol Station so she did not have to drive to Douglas that evening and could instead pick up the [D]efendant the following morning in Tucson." *(Id.)* The FBI took custody of the Defendant at around 9:45 a.m. on November 20, questioned him at the FBI office in Tucson, and then transported him to the Federal Courthouse in Tucson for initial appearance before a magistrate judge at 2:00 p.m. *(Id.)*

The Ninth Circuit has made clear that "the 'terms of [§ 3501(c)] can apply only when there is some "delay" in presentment,' and 'there can be no "delay" in bringing a person before a federal magistrate until, at a minimum, there is some obligation to bring the person before such a judicial officer in the first place.'" *United States v. Gowadia*, 760 F.3d 989, 994 (9th Cir. 2014) (quoting *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357–58 (1994)). Although neither the Supreme Court nor the Ninth Circuit have examined the type of presentment issue that appears in this case, the Second Circuit endorsed the view that defendants in federal custody on other charges are only arrested under § 3501(c) when questioning on new charges begins. *United States v. Gonzalez*, 764 F.3d 159, 168 (2nd Cir. 2014) (reasoning that the clock did not start on a separate charge because the Defendant's "detention until that point was on unrelated federal immigration charges, and neither his indictment nor the issuance of an arrest warrant [on a separate charge] altered the character of the Defendant's detention" until questioning on the separate charges began.)

The circumstances of the two arrests and subsequent appearance before a magistrate judge are dispositive here. Facing high volumes of arrestees at border patrol stations, Border Patrol agents detained the Defendant on a suspected immigration violation on November 18. (Doc. 243 at 3.) Border Patrol agents did not learn of the Indictment until the early evening of November 19, and they did not question him about the Indictment.

- 21 -

(*Id.*) Instead, they notified the FBI that Defendant was in Border Patrol custody and made arrangements with FBI so that FBI could effectuate its arrest of Defendant on the morning of November 20.  (*Id.*)  Questioning on the Indictment did not begin until after the FBI's arrest. (*Id.*)

Given that the questioning occurred within the statutory safe-harbor, the Court need not address the issue of whether any delay in appearance before a magistrate judge was reasonable or necessary.  Nonetheless, the Court takes judicial notice of the fact that, given the schedule of initial appearances at the Federal Courthouse in Tucson, the earliest possible time that the Defendant could have appeared on the indictment charges was 2:00 p.m. on November 20, which he did.

Because the Court agrees with the Magistrate Judge that the "the [D]efendant's confession was obtained well within six-hours of his arrest by the FBI," (*Id.* at 76), the Court denies the motion to suppress based on violation of the *McNabb-Mallory* rule/18 U.S.C. § 3501(c).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED:**

1. The United States's Objection (Doc. 252) is **SUSTAINED** as set forth in this Order.

2. Defendant's Objection (Doc. 253) is **OVERRULED**.

3. The Report and Recommendation (Doc. 243) is **ADOPTED IN PART AND REJECTED IN PART** as set forth in this Order.

4. Defendant's Motion to Suppress (Doc. 144) is **DENIED**.

Dated this 20th day of April, 2022.

_____
Honorable Jennifer G. Zipps
United States District Judge